UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE


| | | |
|---|---|---|
| JAMES CRAIG THOMAS | ) | |
| | ) | |
| v. | ) | NO. 2:13-cv-104 |
| | ) | *Greer/Inman* |
| SHERIFF MIKE REECE | ) | |

## MEMORANDUM and ORDER

This *pro se* prisoner's civil rights complaint and proposed class action lawsuit under 42

U.S.C. § 1983, is before the Court upon plaintiff James Craig Thomas's response to a deficiency

order.[1]

## I. Filing Fee

The certificate section the *in forma pauperis* application plaintiff returned to the Court is

blank, but, in a separate letter, plaintiff explains that he has attempted to acquire the necessary

information from Mindy Forrester, a Notary Public, and, presumably, an officer at the Johnson

County Detention Center ("JCDC") wherein plaintiff is housed, but has been unsuccessful in that

endeavor. Submitted along with the letter is a "STATE INMATE REQUEST" form, which bears

the heading, "Johnson County Sheriff's Office Mike Reece - Sheriff." The "request" section of the

form indicates that plaintiff was renewing a previous request for notarization of legal mail from his

lawyer's office. Underneath the request is this handwritten response: "I'll try to get to it today, if

not remind me tomorrow." The signature is illegible, but the response is dated "4/30/13."

---

[1] The order also required the other fourteen prisoners who were listed as plaintiffs to correct deficiencies identified in their submissions and the Court had attached to the order blank preprinted *in forma pauperis* applications to facilitate their responses. Only plaintiff James Craig Thomas responded to the order and submitted the *in forma pauperis* application, an indication to the Court that the other prisoners have no interest in prosecuting this action, much less in pursuing class action status.

Although the *in forma pauperis* application sent to plaintiff would have been contained in mail from the Court and although plaintiff's request for notary service specifically identified legal mail from his attorney as containing the item(s) which needed to be notarized, it remains that plaintiff is alleging that he has been unable to obtain the necessary signatures of the authorized JCDC employee on plaintiff's *in forma pauperis* application. Failing to provide the certified statement of plaintiff inmate trust account conceivably could inhibit his ability to prosecute his § 1983 case.

However, in *McGore v. Wrigglesworth*, 114 F.3d 601(6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007), the Sixth Circuit instructed that inmates are not to be penalized due to the recalcitrance of prison officials and that "a case may not be dismissed when the payment of an assessment has been delayed by prison officials." *Id.* at 607-08. Despite the importance of the missing trust account statement, *id*. at 607 (calling the trust account the "key to the assessment procedure"), because plaintiff's efforts to obtain it from jail authorities have been unsuccessful, and because he is not at fault for the omission, his case will advance in the typical fashion.

Thus, plaintiff's application to proceed *in forma pauperis* is **GRANTED**, (Doc. 3), and he is **ASSESSED** the civil filing fee of three hundred and fifty dollars ($350).

The Clerk is **DIRECTED** to send a copy of plaintiff's application, the deficiency order, and this order to Johnson County Sheriff Mike Reece, who may not have been aware of this lawsuit, much less the events describing plaintiff's claimed efforts to obtain the statement required by federal law. Even so, the Court needs the certified portion of the application to be completed to determine whether to establish a periodic payment plan for collection of the filing fee assessed against plaintiff.

2

Thus, Sheriff Reece SHALL provide to the Court, within twenty (20) days of the date on this order, either: 1) a certified copy of plaintiff's inmate trust account statement or 2) a statement, signed by an authorized person, evidencing that the Johnson County jail does not maintain prisoner trust accounts. When the Court has this information, it can determine whether, as in the typical prisoner case, the assessed filing fee can be collected under an installment payment plan or whether there is no inmate trust fund from which to collect the payments.[2]

While the Court's actions should not be taken as an expression of opinion as to the correctness of the allegations made in plaintiff's motion, Sheriff Reece may wish to determine whether prisoners housed in the JCDC have been hindered in meeting their filing fee obligations under 28 U.S.C. § 1915(a)(2).

The Court proceeds to screen the complaint.

## II. Screening the Complaint

The complaint must now be reviewed to determine whether it states a claim entitling plaintiff to relief or is frivolous or malicious or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A. If so, this suit must be dismissed. Moreover, *pro*

---

[2] This problem seems to be a recurring one for inmates in the Johnson County Detention Center and may impact the right of access to the courts constitutionally guaranteed to those prisoners. *See Johnson v. Cupp*, Civil Action No. 2:12-cv-144, (Doc. 1, Application to Proceed without Prepayment of Fees at 3. Immediately below the line for the signature of the authorized officer in the "Certificate" section of the form, is this handwritten notation: "Not signed by officer[.] Refused and I will pay you monthly when I get out and until then my wife will in money orders."); *Johnson v. Reece*, Civil Action No. 2:12-cv-231, (Doc. 4, Deficiency Order, noting that plaintiff, in his *in forma pauperis* application, alleged that an officer had refused to sign plaintiff's trust fund statement and advising plaintiff to show a copy of the order to inform the officer of the importance of assisting plaintiff in complying with the federal statutory filing fee requirements for prisoners); *Pritchard v. Smith*, Civil Action No. 2:06-cv-211, (Doc. 5, Prisoner's letter, stating: "I talked to the jail accountent (sic) and she said you'll have to send her something she can sign and release this information to you. . . ."); *Smith v. Gentry*, Civil Action No. 2:04-cv-442, (Doc. 5, Prisoner's letter alleging, that "[i]t is hard for any inmate here in this facility to get cops (sic) of there (sic) paperwork. No one has ever got time to get copys (sic) of the paperwork you need. . . . . According to Mrs. Terrill no inmate doesn't (sic) need copies of their paperwork.").

3

*se* pleadings are to be generously construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). All well-pleaded allegations in the complaint will be taken as true and the factual allegations will be considered to determine whether "they plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). The Court examines the complaint in light of those requirements.

## 1. Plaintiff's Allegations

In his complaint, the plaintiff makes the allegations which follow. The conditions in the JCDC are unsanitary and the facility is overcrowded, with three and four inmates housed in cells designed for two persons. Inmates are forced to sleep in other people's urine on the floor and fighting breaks out. The inmates are being starved because the food they are served lacks a sufficient amount of calories and nutritional content. For example, breakfast is a 120-calorie, eight-ounce glass of 2% milk, a very small biscuit, and either a very small bowl of oatmeal or gravy; lunch is a very small sandwich and no beverage is provided. The JCDC makes money by selling food to the inmates who are being starved, a practice which plaintiff characterizes as extortion. If prisoners complain, they are threatened with a transfer to another facility far away from their families.

Medical care is lacking also, as medications are dispensed at all hours, including to diabetic inmates who have no set time for receiving their medications. Inmates with blood pressure problems sometimes receive their medications at 11:00 p.m.

These complaints have been exhausted through the JCDC inmate grievance procedure but no one (meaning no JCDC jailer or officer) will sign the grievance so that it can be sent to the Court with the complaint.

4

Plaintiff asks for injunctive relief. More specifically, plaintiff requests that a full scale investigation be conducted into the Johnson County Sheriff's Department; that a dietician evaluate the menu served to inmates; that the JCDC be required to supply inmates with food of sufficient nutritional value and to pay for dental and medical treatment for the inmates, rather than asking the inmates to pay their own bills; and that the overcrowding be remedied, so that inmates do not fight for space and are not forced to sleep on the floor. Plaintiff also seeks compensatory damages for the wrongs visited upon the inmates at the JCDC by housing them under these alleged unconstitutional conditions.

## 2. Law and Analysis

The Eighth Amendment to the United States Constitution proscribes punishments which involve the unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). An Eighth Amendment claim has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires the plaintiff to show a "sufficiently serious" deprivation. *Id.* Where prison conditions are concerned, the objective factor is satisfied by a condition which denies the prisoner "the minimum civilized measure of life's necessities." *Ibid.* The subjective component requires a showing of a sufficiently culpable state of mind—one of deliberate indifference. *Id.* at 842. Deliberate indifference is illustrated by a prison official who acts or fails to act despite knowledge of a substantial risk of serious harm to an inmate under his care. *Id.*

First of all, plaintiff's assertions concern inmates who fight, are forced to sleep on the floor

5

in other people's urine, or have diabetes, blood pressure problems, or some other need which requires medications to be given at a set time. However, plaintiff does not indicate that he himself has fought with other inmates because of the overcrowded conditions in the JCDC, that he himself has been forced to sleep on the floor, or that he himself has diabetes or problems with his blood pressure or a need for medications to be dispensed at a certain time.

Plaintiff has failed to show he has standing to pursue claims concerning the constitutionality of the living conditions of his fellow prisoners. *Whitmore v. Arkansas*, 495 U.S. 149 (1990) (A prisoner must assert his own rights, not those of other inmates.). Such a claim could only be asserted if plaintiff himself could show any personal injury sustained as a result of the complained of conditions. *Baker v. Carr*, 369 U.S. 186, 204 (1962). He has not done so. *See ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 659 (6th Cir. 2007) (observing that the standing doctrine "applies to every claim sought to be litigated in federal court").

The one possible exception to the lack of standing is the allegation regarding the quantity and nutritional content of the food which is served to inmates at the JCDC. Since plaintiff is a prisoner confined in the JCDC, it is obvious that he must rely on the authorities in that facility to supply him with food. Prison officials must provide a reasonably adequate diet to prisoners; serving food which does not contain nutritional and caloric content necessary to sustain a prisoner's normal health amounts to cruel and unusual punishment and violates the Eighth Amendment. *Cunningham v. Jones*, 567 F.2d 653 (6th Cir. 1977). Because plaintiff has stated an arguable Eighth Amendment claim involving the food which he is served as a prisoner in the JCDC, this one allegation will be allowed to proceed.

6

## III.  <u>Service</u>

Accordingly, the Clerk is **DIRECTED** to send plaintiff a service packet.  (The packet contains a blank summons and USM 285 form.)  Plaintiff is **ORDERED** to complete the service packet and to return it to the Clerk's office within twenty (20) days of the date on this Order.  Plaintiff is forewarned that his failure to return the completed service packets within the time required could jeopardize his prosecution of this action.

When the completed service packet is received by the Clerk, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service upon defendant Sheriff.  Defendant is **ORDERED** to respond to the complaint in the manner and within the time required by the Federal Rules of Civil Procedure.

Plaintiff is **ORDERED** to inform the Court of any address change within ten (10) days following such change.  He is further cautioned his failure to do so will result in a dismissal of this action for failure to prosecute.

**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

7